Martin A. Bihn (014338)
Donna M. McDaniel (017366)
BIHN & McDANIEL, P.L.C.
2600 N. Central Ave, Suite 1775
Phoenix, Arizona  85004
Tel:     (602) 248 9779
Fax:    (602) 248 9749
Email:         MBihn@phxlegal.com
                    Donna@phxlegal.com
Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Rachelle Sanchez;<br><br>     Plaintiff,<br>vs.<br><br>Town of Superior; Frank Jayme Valenzuela<br><br>     Defendants. | CV:<br><br>**COMPLAINT**<br>**AND**<br>**JURY DEMAND** |

Plaintiff, for her complaint against defendant alleges as follows:

**Parties, Venue & Jurisdiction**

1.     Plaintiff Rachelle Sanchez ("Sanchez") is a resident of Arizona.

2.     Defendant Town of Superior is a political subdivision.

3.     Defendant Frank Jayme Valenzuela ("Valenzuela") is a resident of Arizona and, during the relevant time period, served as the Mayor of the Town of Superior.

4.     Defendants caused events to occur within Arizona out of which this matter arises.

5. This Court has jurisdiction of Plaintiff's federal law claims pursuant to 28 USC § 1331 and supplemental jurisdiction of state law claims pursuant to 28 USC § 1367.

6. A Notice of Claim letter pursuant to A.R.S. § 12-821.01 was timely served on all defendants in May, 2016. Defendants failed to respond to the Notice of Claim letter and it was deemed denied.

7. The Town Code of Superior tasks the Superior Town Clerk with numerous responsibilities regarding postings for public meetings and maintaining certain public records. In addition, the Town Code also requires the Town Clerk to serve as the Town's Treasurer responsible for managing the Town's finances.

8. Margaret Gaston was originally hired to be the Superior Town Clerk. In 2013 the Town added additional responsibilities and Gaston served as both the Town Clerk and Town Manager.

9. In July 2015 Sanchez was hired to take over the Town Clerk position for the Town of Superior.

10. Contrary to the Town Code, responsibility for the Town's finances remained with Margaret Gaston and did not pass to Sanchez when she was hired.

11. As Town Clerk, Sanchez was excluded from financial management. The only financial related duties that Gaston asked Sanchez to perform were reconciliations and general ledger journal entries that performed for several years.

12. Sanchez discovered was that the Town had not entered many of its debit card charges for the 2014-2015 time period. This required Sanchez to make journal entries for the majority of the debit card charges.

13. Sanchez discovered that the Town officials had been combining information from two separate Town bank accounts and had attempted to reconcile them. Sanchez contacted the Town's accounting software vendor and it confirmed that the Town's accounting work with the bank accounts was seriously flawed.

14. While working on this project Sanchez also discovered that there had been cash withdrawals made from the Town's debit card.

15. Sanchez could find no record to indicate which Town official made the withdrawals, she found no receipts for these transactions and she had way to account for the transactions.

16. Sanchez believed that that the withdrawals were thefts and that a crime had been committed.

17. In October 2015, shortly after uncovering these issues, Sanchez brought the matter to the Town Manager Gaston's attention.

18. Sanchez advised the Town Manager that the bank accounts were in disarray because of flawed accounting practices and, more to the point, that someone had been withdrawing cash using the Town's debit card.

19. The Town Manager refused to respond to Sanchez and walked away from Sanchez.

20. Upon information and belief the Town Manger reported Sanchez' findings to Mayor Valenzuela.

21. Over the next few weeks Sanchez continued to try to untangle the Town's checking account morass.

22. As she worked through the accounts she discovered additional cash withdrawals using the Town's debit card. As with the other cash withdrawals, Sanchez found no record reflecting which Town official withdrew the cash, no receipts for these transactions and no way to account for the transactions.

23. Sanchez brought these additional cash advances to the Town Manager's attention. The Town Manager's listened to Sanchez and then walked away, refusing to discuss the problem cash withdrawals.

24. Gaston did not tell Sanchez that only two debit cards had been issued for the Town's accounts, one to Mayor Valenzuela, in his name and one to Gaston, in her name.

25. Upon information and belief, the Gaston reported Sanchez' additional discoveries to Mayor Valenzuela.

26. A week later, at the end of October, the Town Manager gave Sanchez an unsatisfactory evaluation. Sanchez believed the evaluation to be unfair (it wasn't based on the Town's evaluation forms) but was based in part on her work with the bank accounts. Sanchez responded to the evaluation and forwarded her response to the Town Council.

27. On or about December 3, 2015 Mayor Valenzuela called Sanchez into the Town Manager's office. The Town Manager was not present.

28. Valenzuela gave Sanchez a letter advising her that consideration of her termination would be on the agenda at the December 9, 2015 Town Council meeting.

29. Upon information and belief Valenzuela placed issue of Sanchez's termination on the Town Council agenda.

4

30. At the December 9, 2015 Town Council meeting, Sanchez asked to address the Council in open public session regarding her employment.

31. When Sanchez addressed the Town Council, she told council members that she had discovered cash withdrawals from the Town's bank account by a Town official and she disclosed the mismanagement of the Town's accounting.

32. The Council turned to the Town Manager and asked her about this situation. She responded by lying to Council. The Town Manager told the Council that she was not aware of any cash withdrawals.

33. In fact, Sanchez had brought cash withdrawal issue to the Town Manager's attention on at least two occasions.

34. When the Council began to question which Town official had a debit card, Mayor Valenzuela came clean.

35. Valenzuela told the Council that he had used the Town's debit card inadvertently but had repaid the Town for the cash withdrawals.

36. The Town Manager then spoke up and confirmed to the Council that the Mayor had repaid the withdrawals.

37. Mayor Valenzuela and Town Manager Gaston were lying, the cash withdrawals had not been repaid.

38. Mayor Valenzuela then called for action on the consideration of Sanchez' dismissal.

39. Councilmember Estatico moved to dismiss Sanchez and councilmember Tameron seconded the motion. Council members Estatico, Tameron and Aguilar all voted to dismiss Sanchez.

40. Council members Lopez, Alonzo, and Besich-Lira voted against the motion.

41. The Council was deadlocked in a 3-3 tie and the deciding vote was left to Valenzuela.

42. Valenzuela looked at Sanchez, smiled and then cast the deciding vote to dismiss Sanchez.

43. Upon information and belief, Valenzuela actions were taken in retaliation for her reporting his illegal transactions with the Town's debit card to the Town Manager and the Town Council.

44. A subsequent audit revealed even more cash advances by Valenzuela. It also revealed that the Mayor had not repaid the funds to Town prior to Sanchez's December 9, 2015 disclosure.

45. The Attorney General's Office launched a criminal investigation into Valenzuela's use of the Town's debit card in early 2016.

46. The Town's residents initiated an effort to recall Valenzuela in February and, in April 2016, submitted sufficient signatures to trigger a recall election.

47. In July 2016, Mayor Valenzuela was indicted by a grand jury on felony charges relating to the transactions Sanchez first discovered and reported.

48. Immediately after the indictment was announced, Mayor Valenzuela was fired from his position as Jail Commander of Pinal County Sheriff's Office.

49. In August 2016 Valenzuela lost the recall election and was removed from the Town Council.

## COUNT I

### 42 USC § 1983 FIRST AMENDMENT

### Defendant Valenzuela (Official and Individual capacities)

50. Plaintiff realleges paragraphs 1 through 49 as if fully set forth herein.

51. At all material times, Valenzuela was person acting under color of state law for the purposes of 42 USC § 1983.

52. Pursuant to the Town Code, as the Mayor of the Town of Superior, Valenzuela was the Town's chief executive officer and chair of the council.

53. Plaintiff spoke as a private citizen on matters of public concern when she reported the debit card withdrawals to the Town Manager and to the Town Council in a public session regarding her dismissal from employment.

54. Defendant Valenzuela took adverse action against plaintiff by placing consideration of Plaintiff's termination on the Town's agenda and then casting the final and deciding vote to dismiss Plaintiff.

55. Upon information and belief, Plaintiff's reports of what turned out to be Defendant Valenzuela's criminal actions were a substantial or motivating factor for the adverse action against Plaintiff.

56. The act of terminating plaintiff's employment was purely administrative and applied only to plaintiff. Defendant Valenzuela, in his individual capacity, is not entitled to legislative immunity.

7

57.     The Town would not have dismissed Plaintiff in absence of her protected speech.

58.     As a result of the illegal termination, plaintiff has been damaged.

59.     Defendant Valenzuela acted with reckless and callous indifference to plaintiff's federally protected rights entitling plaintiff to punitive damages against him in his individual capacity.

## COUNT II

### ARS 23-1501(3)(c)(ii)  WRONGFUL TERMINATION

### IN VIOTION OF PUBLIC POLICY

### Against Town Of Superior

60.     Plaintiff realleges paragraphs 1 through 59 as if fully set forth herein.

61.     At all material times, plaintiff was an employee of employer Town of Superior.

62.     Plaintiff disclosed to Town Manager and then to Town Council that she had information and/or a reasonable belief that the employer or an employee of the employer was making undocumented cash withdrawals using the Town's debit card, conduct that violated the Arizona theft statutes.

63.     Plaintiff's disclosures were made in a reasonable manner.

64.     Plaintiff's disclosures were made to the Town Manager and Town Council both of whom plaintiff reasonably believed had the authority to investigate plaintiff's disclosures and could take action to prevent further violations of the law.

65. Defendant Town of Superior violated A.R.S. § 23-1501(3)(c)(ii) by terminating plaintiff from her position in retaliation for her disclosures of Mayor Valenzuela's debit card transactions.

66. As a result plaintiff has been damaged.

**WHEREFORE**, Plaintiffs pray that this Court enter judgment for the Plaintiff and against each of the Defendants and grant:

A. compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

B. economic losses on all claims allowed by law, to include back pay and front pay;

C. special damages in an amount to be determined at trial;

D. punitive damages on all claims allowed by law against Defendant Valenzuela in his individual capacity in an amount to be determined at trial;

E. attorneys' fees and the costs associated with this action under 42 U.S.C. § 1988, including expert witness fees, on all claims allowed by law;

F. pre- and post-judgment interest at the lawful rate; and,

G. any further relief that this court deems just and proper, and any other appropriate relief at law and equity.

**JURY DEMAND**

1. Plaintiff demands a jury trial on all issues.

Dated this 15 th day of November, 2016.

                    BIHN & McDANIEL, P.L.C.

                    /s/ Martin A. Bihn

                    Martin A. Bihn

BIHN & McDANIEL, P.L.C.
ATTORNEYS AT LAW
SUITE 1775
2600 NORTH CENTRAL AVENUE
PHOENIX, ARIZONA 85004
(602) 248-9779